# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JERRY LEE HUSKEY, JR.,       )
                                             )
                Plaintiff,             )
                                             )
           v.                      )            No. 4:18-cv-00731-AGF
                                             )
PAUL BURRIS, et al.,             )
                                             )
                                             )
                Defendants.        )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Jerry Lee Huskey, Jr. for leave to amend his complaint. (Docket No. 28). He has enclosed a proposed amended complaint with the motion. (Docket No. 28-1). For the reasons discussed below, the Court will deny plaintiff's motion as futile.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8ᵗʰ Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8ᵗʰ Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8ᵗʰ Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8ᵗʰ Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8ᵗʰ Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### Background

Plaintiff is currently an inmate at the Jefferson City Correctional Center in Jefferson City, Missouri. At the time relevant to this action, however, he was incarcerated at the Phelps County Jail in Rolla, Missouri. He brings this pro se action pursuant to 42 U.S.C. § 1983.

Plaintiff filed his original complaint on May 5, 2018, naming seventeen different defendants in their individual and official capacities. (Docket No. 1). The complaint concerned injuries suffered by plaintiff after a car accident that took place on October 24, 2016, on Highway 72 outside of Rolla. (Docket No. 1 at 9). Following the accident, plaintiff was taken to the hospital.

Later, he was transported to the Phelps County Jail. He was subsequently charged with three criminal counts: first-degree involuntary manslaughter – operating a motor vehicle while in an intoxicated condition; second-degree assault – operating a vehicle while intoxicated, resulting in injury; and possession with intent to distribute methamphetamine. *State of Missouri v. Huskey*, No. 16-PH-CR01403-01 (25th Cir., Phelps County).[1]

Plaintiff alleged that because of the car accident, he began experiencing neck and lower back pain. Two fillings also fell out of his teeth. Despite his requests to see a doctor, he was initially allowed to see only a nurse. Even after seeing a doctor, plaintiff claimed that he was not being properly treated. (Docket No. 1 at 10-11). He asserted that defendants were deliberately indifferent to his medical needs, especially with regard to his dental issues. Plaintiff sought actual damages in the amount of $10,000 and punitive damages in the amount of $500,000. (Docket No. 1 at 28).

On January 2, 2019, the Court granted plaintiff's motion to proceed in forma pauperis, assessed an initial partial filing fee, and reviewed his complaint pursuant to 28 U.S.C. § 1915. (Docket No. 11). The Court ordered process to issue on defendant Dionne Kelly in her individual capacity as to plaintiff's claim that she failed to allow him to see a doctor and intentionally withheld prescribed medication. (Docket No. 11 at 23). The Court also ordered process to issue on defendant Matthew Shults in his individual capacity as to plaintiff's claim that he intentionally denied him medical treatment. All other claims were dismissed. (Docket No. 12).

Summonses were issued as to defendants Kelly and Shults on January 3, 2019. (Docket Nos. 13-14). The summonses were returned executed on January 22, 2019. (Docket Nos. 15-16). Defendant Kelly answered on February 18, 2019, while defendant Shults answered on March 19, 2019. (Docket Nos. 23, 27).

---

[1] Plaintiff's criminal case was reviewed on Case.net, Missouri's online case management system.

On March 20, 2019, plaintiff filed a motion to amend his complaint, which included a proposed amended complaint. (Docket No. 28). Along with the motion to amend, plaintiff filed a motion to appoint counsel and a motion to waive fees and costs. (Docket Nos. 29-30). He has also filed a motion to use attachments as exhibits, a motion to subpoena documents and records, and a motion to submit exhibits into evidence. (Docket Nos. 34-35, 46).

## Proposed Amended Complaint

Plaintiff's proposed amended complaint names a total of twenty-three defendants: Dr. Paul Burris; Judge William E. Hickle; Prosecutor Brendon Fox; Attorney Matthew Crowell; Legal Assistant Brittany Rowe; Sheriff Rick Lisenbe; Sergeant Steven Lorts; Sergeant Dowdy; Corporal Alexander; Officer Reed; Officer Jones; Officer Carl; Attorney Ross Bush; Sergeant Joe Taylor; Corporal Anderson; Officer Letchworth; Officer Dancey; Officer Bramra; Officer Edwards; Officer Hull; Officer Wilcox; Lieutenant Matthew Shults; and Nurse Dionne Kelly. Two of these defendants, Shults and Kelly, have already been served. Twelve of these defendants were previously dismissed from this action. The remaining nine defendants are new. The proposed amended complaint is ninety-one pages long and includes numerous exhibits, which will be treated as part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

As before, plaintiff alleges that on October 24, 2016, while traveling on Highway 72, he was involved in a car accident and taken to a hospital. (Docket No. 28-1 at 13). Plaintiff was subsequently transported to the Phelps County Jail, where he remained for nineteen months before transfer to the Missouri Department of Corrections.

Plaintiff states that immediately after his accident, he began having pain in his neck and lower back, along with a tingling, numbing sensation in his hands, feet, and legs. Between

November 2016 and December 2016, two fillings fell out of his teeth. During this two-month span at the Phelps County Jail, he submitted three sick call forms to see Dr. Burris. Instead, he was only allowed to see Nurse Kelly.

At the end of December 2016, plaintiff alleges that Nurse Kelly made an "uncalled for comment…referencing money," and then advised him that he would be put on the list to see the doctor. Plaintiff states that this "uncalled for comment" occurred in front of Officer Letchworth. On February 6, 2017, plaintiff states that he filed a grievance since he had still not seen the doctor. Nurse Kelly responded to the grievance by advising plaintiff that he had refused the appointment, which was his right. (Docket No. 28-1 at 18).

In April 2017, plaintiff filed several more grievances. Lieutenant Shults responded by advising plaintiff that he would look into plaintiff's medical complaint. (Docket No. 28-1 at 14). On April 19, 2017, he was allowed to see Dr. Burris. (Docket No. 28-1 at 74). Dr. Burris requested that his dental work be done, and also prescribed various medications. Nevertheless, plaintiff states that "over the next couple months," his medical and dental condition continued to get worse. (Docket No. 28-1 at 14). During this period, he claims that Nurse Kelly failed to give him his prescribed medications. He also states that several correctional staff members commented on his swollen jaw.

In May 2017, plaintiff asserts that Judge Hickle stated "under oath" that he would personally look into why plaintiff was not receiving treatment. (Docket No. 28-1 at 15). To plaintiff's knowledge, however, Judge Hickle has not spoken to his attorney or the jail.

In October 2017, plaintiff's attorney, Matthew Crowell, visited plaintiff at the jail and commented on plaintiff's swollen jaw. Attorney Crowell advised plaintiff that he had met with Lieutenant Shults, and that Lieutenant Shults had given assurances that plaintiff would be taken to

a dentist. Plaintiff states that Attorney Crowell instructed him to write Legal Assistant Brittany Rowe with any concerns.

At about the same time in October, plaintiff states that he began requesting care for Hepatitis C. He alleges that Dr. Burris "again failed to treat" him.

Plaintiff alleges that defendants have been deliberately indifferent to his serious medical and dental needs. (Docket No. 28-1 at 16). As a result, he states that he lost fillings out of his #12 and #30 teeth. (Docket No. 28-1 at 39). Plaintiff states that his #12 tooth fractured and will have to be removed. His #30 tooth became abscessed and was eventually removed when plaintiff entered the Missouri Department of Corrections. He also states that he continues to suffer pain in his lower back, legs, and hip. (Docket No. 28-1 at 41).

Plaintiff seeks an order against Judge Hickle and Prosecutor Fox to enjoin them from "further or future physical, emotional, mental, or judicial" harm towards him. (Docket No. 28-1 at 43). He also requests $75,000 in compensatory damages against each defendant, as well as $250,000 in punitive damages against defendants Burris, Kelly, Crowell, Rowe, Bush, Lisenbe, Shults, Lorts, Anderson, and Letchworth. (Docket No. 28-1 at 43-44).

**Discussion**

Plaintiff has filed a motion to amend along with a proposed amended complaint that does the following: adds claims to the two defendants who have already been served; realleges claims against twelve defendants who were previously dismissed on § 1915 review; and adds claims against nine new defendants. The Court has reviewed plaintiff's proposed amended complaint in its entirety. For the reasons discussed below, the Court finds that plaintiff's proposed amended complaint fails to state any additional claims against defendants Shults and Kelly, and fails to state

any claim whatsoever against the remaining defendants. Therefore, the Court will deny plaintiff's motion to amend as futile.

## A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, defendants Hickle, Fox, Lisenbe, Shults, Taylor, Lorts, Dowdy, Anderson, Alexander, Letchworth, Reed, Jones, Carl, Dancey Bramra, Edwards, Hull, and Wilcox are allegedly employed by Phelps County. Defendants Burris and Kelly are allegedly employed by Advanced Correctional Healthcare (ACH). Defendants Crowell, Bush, and Rowe are allegedly employed by the Missouri State Public Defenders Office. Plaintiff's official capacity claims against these defendants are actually claims against their respective employers. To prevail on such claims, he must establish the employer's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

### i. Phelps County Defendants

Plaintiff's official capacity claims against the Phelps County defendants are insufficient to pass § 1915 review because plaintiff has not alleged any facts showing an unconstitutional policy, custom, or failure to train.

A local governing body such as Phelps County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially prove the liability of Phelps County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its

employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff makes no allegations to support the proposition that Phelps County had an unconstitutional policy or custom. That is, he has not demonstrated that his constitutional rights were violated because of "a deliberate choice of a guiding principle or procedure made by the

municipal official who has final authority regarding such matters," as is necessary to establish an unconstitutional policy. Furthermore, he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," much less that such misconduct was authorized by Phelps County officials, such as is necessary to establish an unconstitutional custom.

Plaintiff does state that certain Phelps County employees failed to supervise or train their subordinates. These allegations, however, simply state a cause of action, without providing any factual support. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) (stating that a "pleading must offer more than…a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). In particular, he makes no attempt to present facts showing a "pattern of similar constitutional violations by untrained employees," which is necessary to establish a deliberately indifferent failure to train or supervise on the part of a municipality. Therefore, plaintiff's official capacity claims against the Phelps County defendants are insufficient to pass § 1915 review.

### ii. ACH Defendants

Plaintiff's official capacity claims against the ACH defendants are insufficient to pass § 1915 review because plaintiff has not alleged any facts showing that a policy, custom, or official action caused his alleged constitutional injury.

ACH is a private company that contracts with the Phelps County Jail to provide medical services. A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also*

*Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Plaintiff alleges no facts to establish that his alleged denial of medical care resulted from a policy, custom, or official action on the part of ACH. Therefore, his official capacity claims against the ACH defendants are insufficient to pass § 1915 review.

### iii.    Missouri State Public Defenders Office

Plaintiff's official capacity claims against the Missouri State Public Defenders Office defendants are inadequate for purposes of § 1915 review because the State Public Defenders Office is not suable under § 1983.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Furthermore, an agency exercising state power is also not a person subject to suit under § 1983. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff's official capacity claims against the Missouri State Public Defenders Office defendants are claims against the State. However, the State is not a person for purposes of § 1983. The State is also entitled to the protections of the Eleventh Amendment. Therefore, plaintiff's official capacity claims against the Missouri State Public Defenders Office defendants are insufficient to pass § 1915 review.

## B. Individual Capacity Claims

The basis of plaintiff's claims against all defendants is that defendants were deliberately indifferent to his medical and dental needs.

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also*

*Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cty.*, 801 F.3d 912, 920 (8th Cir. 2015). Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official actually knew of but disregarded that serious medical need. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). In order to meet the objective component of this standard, the complaint must plead facts sufficient to demonstrate that the plaintiff suffered from an objectively serious medical need, meaning one that has been diagnosed by a physician as requiring treatment or that is so obvious even a layperson would recognize the need for a doctor. *See Barton*, 820 F.3d at 964.

### i. Defendant Burris

The Court previously determined that plaintiff's allegations against Dr. Burris were insufficient to state a claim for purposes of § 1915 review. (Docket No. 11 at 14). In so finding, the Court noted that by plaintiff's own acknowledgment, he saw Dr. Burris on a number of occasions, during which time Dr. Burris ordered him taken to a hospital for an x-ray, ordered him taken to a hospital for an MRI, and ordered him to see a dentist. Plaintiff clearly disagreed with

Dr. Burris's ultimate course of treatment, but such disagreement failed to state a constitutional violation. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). *See also White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) (stating that doctors "are entitled to exercise their medical judgment").

In his proposed amended complaint, plaintiff now alleges that he has Hepatitis C, and that Dr. Burris "failed to order testing, bloodwork or ultrasound to determine [the] severity of [the] illness." (Docket No. 28-1 at 22). He also alleges that Dr. Burris failed to "make and carry out a treatment plan" and failed to "[enforce] orders given to [the] jail and nurses."

Plaintiff's allegations regarding his Hepatitis C treatment relies on vague and conclusory language. While plaintiff lists all the things that Dr. Burris allegedly "failed" to do, he does not provide any factual support for the proposition that these failures violated a constitutional right. He does not, for example, state why he believes testing, bloodwork, or an ultrasound were medically necessary, or how the denial of such tests constituted deliberate indifference to an objectively serious medical need. He also provides no indication as to why a treatment plan was needed, or what orders Dr. Burris failed to enforce. "While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Therefore, plaintiff has again failed to state a claim against Dr. Burris in his individual capacity that is capable of surviving § 1915 review.

## ii.     Defendant Kelly

The Court previously determined that plaintiff's claims that Nurse Kelly failed to allow him to see a doctor for approximately five months and intentionally withheld prescribed medications were sufficient for purposes of § 1915 review. (Docket No. 11 at 18). In doing so,

however, the Court also determined that plaintiff failed to state a claim with respect to his allegations that Nurse Kelly attempted to diagnose him without a doctor's consent and billed him for services he did not request.

In his proposed amended complaint, plaintiff essentially realleges the same facts as before. Once again, he asserts that Nurse Kelly did not allow him to see the doctor and withheld prescribed medications. (Docket No. 28-1 at 23). The Court previously issued on these claims. *See Vaughn*, 49 F.3d at 1346 (stating that deliberate indifference can include the intentional denial or delay of medical care); and *Haltiwanger v. Mobley*, 230 F.3d 1363, 2000 WL 1371098, at *1 (8th Cir. 2000) (unpublished decision) (stating that "allegation that prison official has ignored instructions of prisoner's treating physician by not dispensing prescribed medication is sufficient to state deliberate indifference claim").

Plaintiff also reasserts that Nurse Kelly diagnosed his "injuries without proper license, training or consent" and that she billed him for unwanted services. (Docket No. 28-1 at 23, 75). The allegation regarding Nurse Kelly's purported diagnosis is conclusory and provides no factual enhancement to demonstrate how her alleged actions constituted deliberate indifference to a serious medical need. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (stating that "naked assertions devoid of factual enhancement will not suffice" to state a cause of action). Moreover, at most, this allegation supports a claim of malpractice, which is not actionable under the Eighth Amendment. *See Popoalii*, 512 F.3d at 499. The claim that Nurse Kelly billed him for unwanted services fails because it does not state a constitutional violation. *See Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445 (8th Cir. 1995) ("Section 1983 relief is predicated on the denial of a right or interest protected by the Constitution").

In Attachment O of his proposed amended complaint, plaintiff accuses Nurse Kelly, along with numerous other defendants, of "ignoring his serious medical need for Hep C." (Docket No. 28-1 at 72). This unsupported conclusion fails to state a cause of action. *See Hamilton*, 621 F.3d at 817-18.

With the exception of the two claims upon which the Court previously issued service, plaintiff's allegations against Nurse Kelly in her individual capacity fail to state a claim that is capable of passing § 1915 review.

### iii.    Defendant Hickle

The Court previously determined that Judge Hickle was entitled to judicial immunity on plaintiff's claim against him. Specifically, the Court found that Judge Hickle's refusal to lower plaintiff's bond, even after being apprised of plaintiff's medical condition, was an action performed within Judge Hickle's judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991); and *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982).

In his proposed amended complaint, plaintiff now alleges that he twice advised Judge Hickle of his medical needs, once while under oath. (Docket No. 28-1 at 24-25). He states that both times Judge Hickle stated he would "look into the matter" but never did. As such, plaintiff concludes that Judge Hickle "participated and knowingly allowed for [his] physical, mental, and emotional torture." (Docket No. 28-1 at 24). Plaintiff further alleges that Judge Hickle violated his constitutional rights by accepting his guilty plea when he was incapable of making appropriate decisions. (Docket No. 28-1 at 24, 67).

To the extent plaintiff alleges that Judge Hickle violated his constitutional rights by not intervening when informed of his medical condition, he has failed to establish Judge Hickle's liability. In a § 1983 case, "[g]overnment officials are personally liable only for their own

misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Despite plaintiff's repeated insistence that Judge Hickle was his "guardian" or "caregiver," it is clear that Judge Hickle's role was as presiding judge in plaintiff's criminal case. To that end, plaintiff does not demonstrate that Judge Hickle was responsible for providing plaintiff with medical or dental care. Thus, he has not shown that Judge Hickle intentionally delayed or denied him treatment for a serious medical need in contravention of the Eighth Amendment.

To the extent that plaintiff asserts that Judge Hickle violated his constitutional rights by accepting his guilty plea, such claim also fails. Plaintiff pled guilty to involuntary manslaughter, second-degree assault, and possession with intent to distribute methamphetamine on April 2, 2018. *State of Missouri v. Huskey*, No. 16PH-CR01403-02 (25th Cir., Phelps County). An attack on his plea implies the invalidity of his conviction. However, he has not demonstrated that this conviction has been invalidated or overturned. Thus, this claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994). Therefore, for the reasons discussed above, plaintiff has failed to state an individual capacity claim against Judge Hickle that is sufficient for purposes of § 1915 review.

### iv. Defendant Fox

The Court previously determined that Prosecutor Fox was entitled to prosecutorial immunity on plaintiff's claims against him. (Docket No. 11 at 8). Despite plaintiff's additional allegations, Prosecutor Fox is still immune.

In his proposed amended complaint, plaintiff alleges that Prosecutor Fox failed to disclose that he attended church with one of plaintiff's victims. (Docket No. 28-1 at 25). He also asserts that Prosecutor Fox objected to a bond reduction with "evil intent," even though he was aware of plaintiff's "serious medical need." (Docket No. 28-1 at 26). Finally, he states that Prosecutor Fox

violated his constitutional rights by allowing him to plead guilty when he was "incapable of making appropriate decisions."

Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). This immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Id*. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013).

Plaintiff's allegations against Prosecutor Fox concern his actions during the prosecution and presentation of a criminal case. Thus, Prosecutor Fox is entitled to absolute immunity. This immunity is not defeated by allegations of improper motive, unethical conduct, vindictiveness,

self-interest, or malice. Therefore, plaintiff's claims against Prosecutor Fox are not sufficient to pass initial review.

**v.    Defendants Crowell, Rowe, and Bush**

The Court previously dismissed plaintiff's claims against Attorney Crowell and Legal Assistant Rowe because they were not acting under color of state law for purposes of § 1983. (Docket No. 11 at 6). Plaintiff's claims against Attorney Bush are new.

In his proposed amended complaint, plaintiff alleges that Attorney Crowell was aware of his serious medical needs and "failed to file motions to ensure [his] safety and well being." (Docket No. 28-1 at 26). He further states that Attorney Crowell failed to act in his best interest and compel the Phelps County Jail to provide him medical care. (Docket No. 28-1 at 27).

As to Legal Assistant Rowe, plaintiff asserts that she witnessed plaintiff's serious need for medical care because she commented on his swollen right jaw. He also states that he wrote to Legal Assistant Rowe, apprising her of his medical issues. (Docket No. 28-1 at 27, 49-54).

As to Attorney Bush, plaintiff alleges that Bush "failed to file motions to address the [court's] violation of his constitutional rights to due process." (Docket No. 28-1 at 28). He further asserts that Attorney Bush allowed him to plead guilty when he was incapable of making such decisions. Finally, plaintiff states that Attorney Bush was present on a client visit when plaintiff lost consciousness. He accuses Attorney Bush of failing to call for an ambulance and failing to insist that he be taken to the hospital.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, only state actors can be held liable under §

1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law"); and *Sanders*, 984 F.2d at 975 (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties).

Here, it is alleged that Crowell and Bush are attorneys at the Missouri State Public Defenders Office, while Rowe is a legal assistant. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). *See also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). Actions such as filing or not filing a motion, or counseling a client to take a plea deal, are among the traditional functions of defense counsel, and are not performed under color of law.

Likewise, the alleged failure of these defendants to secure medical care for plaintiff does not constitute action under color of law. That is, plaintiff has not established that Attorney Crowell, Attorney Bush, or Legal Assistant Rowe were legally responsible for providing him medical care while incarcerated. It thus follows that he has not established that their subsequent failure to provide this care constitutes state action that is redressable via § 1983.Therefore, plaintiff's claims

against Attorney Crowell, Attorney Bush, and Legal Assistant Rowe in their individual capacities fail to state a claim for purposes of § 1915 review.

### vi.     Defendant Lisenbe

In his original complaint, plaintiff sued Sheriff Lisenbe in his official capacity only. Now, he purports to add an individual capacity claim as well.

Plaintiff states that Sheriff Lisenbe was the Sheriff of Phelps County, Missouri, and accordingly "responsible for the operation of [the] jail and welfare of all inmates in [the] jail." (Docket No. 28-1 at 29). He also states that Sheriff Lisenbe failed to ensure that the medical and dental needs of inmates was being met; failed to ensure that correctional officers were following procedures; and failed to adhere to Dr. Burris' medical and dental advice. (Docket No. 28-1 at 30).

Vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Deslodge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

Here, plaintiff has failed to allege facts showing that Sheriff Lisenbe participated in the alleged constitutional violation or failed to train or supervise his subordinates. Instead, he relies on three statements that purport to list Sheriff Lisenbe's failures. None of these statements include any factual support; rather, they come to a legal conclusion that Sheriff Lisenbe's actions, whatever they might have been, resulted in a constitutional violation. The Court is not bound to accept these statements as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (stating that "[c]ourts are

not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Therefore, plaintiff has failed to state an individual capacity claim against Sheriff Lisenbe that is sufficient to survive § 1915 review.

### vii.    Defendant Shults

The Court previously determined that plaintiff's claim against Lieutenant Shults for intentionally denying him access to dental treatment was sufficient for purposes of initial review. (Docket No. 11 at 20). In doing so, the Court rejected plaintiff's claims that Lieutenant Shults failed to hire qualified personnel, failed to properly train personnel, chose to ignore inmate medical and dental issues, and knowingly allowed subordinates to violate the constitutional rights of all inmates. The Court explained that such allegations failed because plaintiff merely recited the elements of a cause of action, without providing any factual support.

In his proposed amended complaint, plaintiff states that Lieutenant Shults denied him medical and dental treatment; knowingly allowed correctional officers to violate the constitutional rights of inmates; and failed to properly supervise and train correctional officers. (Docket No. 28-1 at 30-31).

These allegations are almost identical to the conclusory allegations contained in the original complaint. They do nothing more than state the elements of a cause of action, without factual support. Thus, the Court is not bound to accept these statements as true. *See Wiles*, 280 F.3d at 870 ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Likewise, plaintiff's new allegation that Lieutenant Shults ignored his Hepatitis C is nothing more than an unsupported conclusion. There

is no indication whatsoever in the amended complaint that Lieutenant Shults was ever aware of plaintiff having Hepatitis C. Finally, plaintiff's claim that Lieutenant Shults did not respond to his grievances fails because a grievance procedure does not confer upon an inmate a substantive right. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

The Court previously issued service on Lieutenant Shults on plaintiff's claim that Lieutenant Shults denied plaintiff dental treatment. (Docket No. 11 at 21-22). The additional allegations in the proposed amended complaint are similar to those already dismissed on initial review. Thus, with the exception of the claim upon which the Court previously issued service, plaintiff's allegations against Lieutenant Shults in his individual capacity fail to state a claim for purposes of § 1915 review.

### viii. Defendants Lorts, Alexander, and Jones

The Court previously determined that plaintiff had failed to adequately allege claims of deliberate indifference or any other constitutional violation against defendants Lorts, Alexander, or Jones. (Docket No. 11 at 17). Plaintiff's proposed amendments do not rectify the earlier inadequacies.

In his proposed amended complaint, plaintiff alleges that Sergeant Lorts knew that plaintiff was relying on Phelps County Jail authorities to treat his medical needs; saw that plaintiff's jaw was swollen; failed to properly train correctional officers; answered grievances with "evil intent;" and made threats to deter plaintiff from pursuing legal action. (Docket No. 28-1 at 32).

As to Corporal Alexander, plaintiff alleges that Alexander failed to report supervisors for their gross negligence and constitutional violations and knew that plaintiff relied on jail authorities for medical and dental treatment. He also states that his injury was obvious to a lay person, though he does not assert that Corporal Anderson actually knew of it. (Docket No. 28-1 at 33).

As to Officer Jones, plaintiff alleges that Jones "failed to report plaintiff's obvious medical and dental need." (Docket No. 28-1 at 34). He also accuses Officer Jones of failing to report her supervisors for violating plaintiff's constitutional rights. (Docket No. 28-1 at 35).

None of plaintiff's allegations against these three defendants adequately states a claim of a constitutional violation. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Moreover, the "essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

Here, plaintiff does nothing more than provide labels and conclusions, which fails to give each individual defendant any indication of what they are specifically alleged to have done. For instance, he accuses both Corporal Alexander and Officer Jones of failing to report supervisors for committing alleged constitutional violations. However, he provides no facts showing when this supposedly occurred, the identify of the supervisors, the nature of the purported constitutional violation, or even whether the defendants actually witnessed the incident. Similarly, plaintiff's claim that Sergeant Lorts failed to properly train subordinate correctional officers does nothing more than present a legal conclusion. That is, he alleges no supporting facts to describe the constitutionally deficient actions that Sergeant Lorts took or failed to take. Furthermore, plaintiff gives no indication as to why the mere fact that defendants were aware of his medical condition amounts to deliberate indifference. Awareness of a medical condition is not the same thing as delaying or denying treatment for that condition. *See Jackson*, 756 F.3d at 1066.

Plaintiff's additional claims against Sergeant Lorts for answering grievances with "evil intent" and for making threats to deter him from legal action also fail. First, a grievance procedure does not confer upon him a substantive right. *See Buckley*, 997 F.2d at 495. Thus, his complaint regarding how Sergeant Lorts handled his grievances does not take on a constitutional dimension. Second, plaintiff's vague assertion that Sergeant Lorts threatened him fails to present the nature of the threat and whether or not the threat was carried out. Thus, he has failed to state a retaliation claim under either the First or Eighth Amendments. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (stating that a First Amendment retaliation claim must include allegations that plaintiff engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity); and *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (stating that under the Eighth Amendment, a "prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline").

For the reasons discussed above, plaintiff's individual capacity claims against defendants Lorts, Alexander, and Jones are insufficient for purposes of § 1915 review.

### ix.    Defendant Reed

The Court previously determined that plaintiff failed to state a claim of deliberate indifference against Officer Reed. (Docket No. 11 at 15). Plaintiff's proposed amendments likewise fail to state a claim capable of passing § 1915 review.

In his proposed amended complaint, plaintiff alleges that Officer Reed "failed to call for immediate assistance" when plaintiff lost consciousness in the attorney/client visitation area.

(Docket No. 28-1 at 34). He states that this failure to request emergency assistance showed Officer Reed's "evil intent."

Plaintiff's allegations do not demonstrate that Officer Reed's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *See Jackson*, 756 F.3d at 1066. Nor do they show the "highly culpable state of mind approaching actual intent" that is required for deliberate indifference. *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). For instance, plaintiff does not state how long he was unconscious, whether he was injured, and if he was injured, whether that injury was apparent. In other words, he does not demonstrate that calling for immediate assistance was necessary. Furthermore, he fails to state how much of this incident Officer Reed witnessed. That is, it is not apparent from the proposed amended complaint whether Officer Reed saw plaintiff faint, or whether he arrived later. In short, plaintiff's fleeting reference to Officer Reed's actions in the attorney/client visitation area does not establish that Reed's failure to call for immediate assistance violated the Eighth Amendment. Moreover, his statement that Officer Reed acted with "evil intent" is entirely unsupported. Therefore, plaintiff's individual capacity claim against Officer Reed is insufficient to pass § 1915 review.

x.      **Defendants Dowdy and Carl**

The Court previously dismissed plaintiff's deliberate indifference claims against Sergeant Dowdy and Officer Carl. (Docket No. 11 at 17). Plaintiff's proposed amendments still fail to state a claim.

In his proposed amended complaint, plaintiff alleges that Sergeant Dowdy "saw and made comments as to the swelling of plaintiff's right jaw;" intentionally denied or delayed access to medical and dental treatment; and failed "to dispense/deny proper amounts of prescribed medication." (Docket No. 28-1 at 32).

As to Officer Carl, plaintiff alleges that Carl knew that plaintiff needed medical and dental care and commented on his swollen jaw; failed on more than one occasion to dispense the proper amount of prescribed medication; and failed to report his supervisors for violating his constitutional rights. (Docket No. 28-1 at 35).

Plaintiff's assertion that Sergeant Dowdy and Officer Carl saw and commented on his swollen jaw is insufficient to state a claim of deliberate indifference because it does not describe an action that is "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *See Jackson*, 756 F.3d at 1066. Simply stating that a correctional officer noticed an injury is not the same thing as being deliberately indifferent to that injury.

Plaintiff's allegations that Sergeant Dowdy and Officer Carl failed to dispense the proper amount of medication also fails, because he does not adduce any facts to show this amounted to a disregard of a serious medical need. That is, he does not name the medication; he does not state what the medication was for; and he does not state the danger to him of not receiving the proper amount of medication. Moreover, a simple failure to dispense the proper quantity of medication amounts to a claim of negligence, which is not actionable. *See Standish v. Bommel*, 82 F.3d 190, 191 (8th Cir. 1996) (stating that "mere negligence does not violate the Eighth Amendment"); and *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (stating that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). Therefore, plaintiff's individual capacity claims against Sergeant Dowdy and Officer Carl are insufficient to survive § 1915 review.

### xi. Defendant Letchworth

Plaintiff's claims against Officer Letchworth appear for the first time in his proposed amended complaint. In the proposed amended complaint, he alleges that Officer Letchworth

verbally threatened "to place him in the hole if he mentioned to Dr. Burris the lack of treatment he was receiving." (Docket No. 28-1 at 34). He states this threat was made with "evil intent." Plaintiff also accuses Officer Letchworth of failing to report supervisors for violating plaintiff's constitutional rights.

As discussed above, plaintiff's failure to report claim is a legal conclusion that the Court is not required to accept as true.

Plaintiff's claim that Officer Letchworth threatened him also fails. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). To determine whether a constitutional line has been crossed, a court looks to factors such as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). A "threat is redressable under § 1983 if it caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id*.

Here, plaintiff has not demonstrated that the alleged threat made by Officer Letchworth is redressable by § 1983. He has not shown, for example, that he was injured in any way by the threat. Moreover, he has not asserted that the threat was every carried out. That is, there is no indication that plaintiff was ever disciplined by being placed "in the hole" for speaking with Dr. Burris or otherwise attempting to obtain medical care.

Therefore, for the reasons discussed above, plaintiff's individual capacity claims against Officer Letchworth are insufficient to pass § 1915 review.

### xii.    Defendants Taylor, Anderson, Dancey, Bramra, Edwards, Hull, and Wilcox

Plaintiff's claims against Sergeant Taylor, Corporal Anderson, and Officers Dancey, Bramra, Edwards, Hull, and Wilcox appear for the first time in his proposed amended complaint.

As to Sergeant Taylor, plaintiff alleges that Taylor knew of plaintiff's medical and dental needs; knew that Dr. Burris ordered plaintiff to receive treatment; saw and commented on the swelling in plaintiff's jaw; and failed to respond to grievances. (Docket No. 28-1 at 31).

As to Corporal Anderson, plaintiff alleges that Anderson advised him that when funds were available in his inmate account, he would receive the medical and dental treatment he needed; that he was aware of the swelling in plaintiff's jaw; and that he was aware that plaintiff was relying on jail authorities to meet his medical and dental needs. (Docket No. 28-1 at 33).

As to Officer Dancey, plaintiff alleges that Dancey failed to report his supervisors for violating his constitutional rights; failed to report plaintiff's obvious need for medical and dental attention; and allowed Nurse Kelly to "intentionally inflict unnecessary and wanton pain" on him. (Docket No. 28-1 at 35-36).

As to Officer Bramra, plaintiff states that Bramra was present when Nurse Kelly advised him that he would only receive treatment when he had funds available on his inmate account. (Docket No. 28-1 at 36). He further states that Officer Bramra was aware of his medical and dental needs but failed to report his "mental, physical and emotional abuse/torture." He also asserts that Officer Bramra was aware that plaintiff was relying on the Phelps County Jail for his medical and dental needs.

As to Officer Edwards, plaintiff states that Edwards was aware of plaintiff's "obvious need for medical/dental care" and was aware of plaintiff's need for dental treatment due to the swelling in his jaw. (Docket No. 28-1 at 37).

As to Officer Hull, plaintiff alleges that Hull knew that plaintiff had a serious medical condition because "he commented more than [once] that it looked as if plaintiff had been in [a] boxing match with Mike Tyson."

As to Officer Wilcox, plaintiff alleges that Wilcox was aware that the Phelps County Jail was disregarding the rights of detainees and that plaintiff was relying on Phelps County Jail to provide his medical and dental needs. He also states that due to the swelling of his jaw, it was obvious that he needed medical treatment.

None of the allegations against these seven defendants are sufficient to state a claim of a constitutional violation. Instead of providing facts as to what each individual did, plaintiff relies entirely on labels and legal conclusions, essentially restating the same boilerplate allegations for each defendant. This is inadequate to state a claim for relief. *See Johnson*, 901 F.3d at 977 (stating that pleadings "must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Furthermore, plaintiff's bare and repetitive assertions do not provide fair notice to the defendants as to what they are alleged to have done to violate plaintiff's rights. *See Topchian*, 760 F.3d at 848 ("The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Clearly, the addition of these defendants in plaintiff's proposed amended complaint is an attempt to impose liability on anyone plaintiff came in contact with while at the Phelps County Jail. To impose such liability, however, requires plaintiff to demonstrate what each of these

individuals did or did not do to violate his constitutional rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"). Instead, as noted above, he makes some variety of the same conclusory allegations against each of these seven defendants. Therefore, the individual capacity claims against Sergeant Taylor, Corporal Anderson, and Officers Dancey, Bramra, Edwards, Hull, and Wilcox are not adequate to survive § 1915 review.

### C. Motion to Amend

Plaintiff has filed a motion to amend his complaint. (Docket No. 28). Typically, such leave should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court must deny plaintiff's motion.

Along with his motion, plaintiff has submitted a proposed amended complaint (Docket No. 28-1), which supplements the claims to the two defendants who have already been served; realleges claims against twelve defendants who were previously dismissed on § 1915 review; and adds claims against nine new defendants.

As discussed above, the Court has reviewed plaintiff's proposed amended complaint in its entirety, and has determined that none of the claims presented – aside from the claims upon which service was previously issued – would survive initial review pursuant to 28 U.S.C. § 1915(e)(2)(B). In other words, even if plaintiff were allowed to amend his complaint, his amended complaint would be subject to dismissal. Because allowing plaintiff to amend the complaint would be futile, the motion must be denied. *See Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (stating that "there is no absolute right to amend and a court may deny the motion based upon a finding of…futility"); *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005) (stating that "there is no absolute right to amend and a finding of…futility of the amendment may be grounds to deny a

motion to amend"); and *Holloway v. Dobbs*, 715 F.2d 390, 392 (8th Cir. 1983) (stating that district court was justified in denying plaintiff's leave to amend because the "complaint, as amended, could not withstand a motion to dismiss").

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 29). This is plaintiff's third such motion and it must be denied at this time.

In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Moreover, as discovery has not yet commenced, the complexity of the case and the existence of conflicting testimony is not known. Finally, plaintiff has not alleged any additional facts that were not present in the earlier motions, which this Court denied. The Court will entertain future motions for appointment of counsel as the case progresses.

### E.  Motion to Waive Fees and Costs

Plaintiff has filed a motion to waive fees and costs. (Docket No. 30). In the motion, plaintiff states that he is indigent and that aside from family support, he receives only $8.50 a month. He also notes that he was previously granted leave to proceed in forma pauperis. As such, he asks the Court to waive the remainder of the balance he owes for his filing fee, as well as all future fees and costs.

Pursuant to 28 U.S.C. § 1915, a prisoner bringing a civil action in forma pauperis "*shall* be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (emphasis added). While the prisoner is allowed to pay the filing fee in installments, he or she is still required to make payments until the fee is paid in full. 28 U.S.C. § 1915(b)(2). Based on the statutory language, payment of these fees is mandatory.

Furthermore, plaintiff has not demonstrated that he has no funds and cannot pay the filing fee in this case. Specifically, he has not submitted an updated copy of his inmate account statement showing that he has no funds available in his account. Therefore, plaintiff's motion to waive fees and costs must be denied.

### F.  Proposed Order to Show Cause for a Preliminary Injunction

Plaintiff has filed a proposed order to show cause for a preliminary injunction. (Docket No. 31). The proposed order seeks to enjoin Judge Hickle and Prosecutor Fox from any future participation in any case involving plaintiff. To the extent that this filing can be construed as a motion for a preliminary injunction, it must be denied.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to

the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). The burden of proving that a preliminary injunction should be issued rests with the party seeking injunctive relief. *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

Here, plaintiff has not carried his burden of demonstrating that he is entitled to a preliminary injunction because he has not shown a likelihood of success on the merits. Specifically, as discussed above, plaintiff's claims against Judge Hickle and Prosecutor Fox are insufficient to pass initial review pursuant to 28 U.S.C. § 1915. Therefore, to the extent that plaintiff's proposed order to show cause for a preliminary injunction can be construed as a motion for a preliminary injunction, the motion must be denied.

### G.  Motion to Subpoena Documents and Records

Plaintiff has filed a motion to subpoena documents and records. (Docket No. 34). Discovery has not yet commenced in this case; thus, plaintiff has not established that the information he seeks cannot be obtained through normal discovery methods. As such, plaintiff's motion will be denied at this time.

### H.  Motion to Use Attachments as Exhibits and Motion to Submit Exhibits Into Evidence

Plaintiff has filed a motion to use attachments as exhibits and a motion to submit exhibits into evidence. (Docket Nos. 35, 46). The Court does not accept discovery and disclosure materials "except as exhibits to a motion or memorandum." E.D. Mo. L.R. 26 – 3.02. Therefore, the motions must be denied.

Plaintiff may file his exhibits as an attachment to his motion for summary judgment if he wishes to file one after the close of discovery. The discovery deadline will be set forth in the Court's Case Management Order, which will be issued herewith.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to amend his complaint (Docket No. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 29) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to waive fees and costs (Docket No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for a preliminary injunction (Docket No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to subpoena documents and records (Docket No. 34) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to use attachments as exhibits (Docket No. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to submit exhibits into evidence (Docket No. 46) is **DENIED**.

Dated this 17th day of July, 2019.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE